The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning and welcome to the Fourth Circuit. Judge Harris, Judge Quattlebaum and I are very pleased to be hearing your cases today. Our first case is United States v. Antonio Miller. Ms. Harrell? Good morning, Judge Keenan and may it please the Court. My name is Emily Harrell. I'm here on behalf of the appellant Anthony Miller, Antonio Miller. In 1988, Justice Scalia wrote the following in Murray v. United States. An officer with probable cause sufficient to obtain a search warrant would be foolish to enter the premises first in an unlawful manner. By doing so, he would risk suppression of all evidence on the premises, both seen and unseen, since his action would add to the normal burden of convincing a magistrate that there is probable cause. The much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officer's decision to seek a warrant or the magistrate's decision to grant it. Counsel, can I, I understand the principle of law you're stating now. So the district court, the holding that we're reviewing is that the defendant didn't have standing to challenge the search of the car, had no reasonable expectation of privacy in the car. And you are arguing that the search of the car was unconstitutional on the merits. So can you just connect those things for me? The search of the car is unconstitutional on the merits because the car was located in the curtilage. No, I understand your argument for why it was unconstitutional on the merits. I'm not understanding how that is responsive to the district court's holding, that there was no reasonable expectation in the car. Well, the district, the, in the, are you challenging, so the district court said you have no reasonable expectation in this car, you can't challenge the search because you're not on the agreement and the car was overdue. Are you challenging any of that? Not at this point, because the more important question is whether under Collins, um, Mr. Miller had an expectation of privacy in the curtilage of his home. All I'm asking you is, we're looking at the standing holding, you're making an argument on the merits, and I'm just asking you, I think they may connect up, but I'm wondering if you can connect them up for me. That's not a question I had anticipated answering at this point, um, because the, he has standing under Collins. To challenge what? The, the entry of the officers onto his property. And from that it would follow, I'm just asking you to explain how what you want us to hold, what, what would we say for why we are reversing the district court's standing holding? Because Mr. Miller had standing under Collins to challenge the officer's property to search for the vehicle. Okay. And, and, and, and so. And so. It's unconstitutional. How does that relate to what the district court said? Well, the district court chose not to address the Collins issue. I, I, all I'm asking is, I, I think you have an argument, but it's not in your brief and so I'm troubled, but I think your argument is, look, if they violated the constitution when they crossed the curtilage, it doesn't matter if there's a reasonable expectation of privacy in the car anymore because what they found in the car would be tainted by that original illegality. Is that your argument? Yes, absolutely. And I, I included that basic argument in my 28J letter in response to Mr. Booth's argument about the inevitable discovery because the, the issue is it doesn't matter what they found in the car. What, what matters is that they entered his property unconstitutionally. It still matters what they found in the car because they didn't, there's no evidence that derives directly from the entry onto the curtilage. So of course it matters what they found in the car. That's what you want suppressed. Correct. Okay. Let me, the reason I'm concerned about this is because I don't, this, I don't mean to be sort of bogging you down in semantics, but I didn't see this argument in your brief and I also didn't see you make it to the district court and that's my real concern. Well, I, I was not counsel in the district court and I didn't see the defendant's counsel. So, um, as I said in my brief, Mr. Bloom did raise the fact that if the car had been in a garage or been in the, he didn't say in the living room, but let's say the Collins argument is in the living room, that they would not, they would had to have had a warrant to come onto his property, to go in the garage and search for the car itself. Yeah. So I'm going to stop in one minute, but I just want to be really frank about my concerns. Okay. And I, it's helpful for me to know you were in counsel below, but, um, I, I, I am hope, I am wondering whether there is a way to address my concerns. So the district court, I read the whole hearing, the district court thinks the question is, was there a reasonable expectation of privacy in the car so that there is standing to challenge the car search? I agree that in a couple of places, counsel mentioned this curtilage issue, but I'm not seeing counsel connecting it up and saying, if I'm right about the curtilage, it doesn't matter anymore whether there was a reasonable expectation of privacy in the car. Um, I think the district court reasonably thought, look, if I think there was no reasonable expectation of privacy in the car, we're done here. You don't have standing. And I don't see counsel ever saying that that is wrong. So my argument to that would be, would be that Mr, the suppression hearing and Mr. Miller's guilty plea came before Collins was decided. So Mr. Booth does make the argument. Yes, they had been granted cert and I can't remember whether there had been argument in the Supreme court, but Collins was decided after Mr. Miller entered his guilty plea. So my argument would be that, yes, the illegal entry onto the property to look for and find the vehicle that necessarily means that everything after that, including the search of the car in the curtilage of his unconstitutional. So how does the presence of the people outside the house affect your analysis given the precedent that we have concerning the officer's right to come up up to the home to engage in a consensual encounter? Officer Ham did not enter the property to engage in a consensual encounter with individuals standing in the backyard. Does it matter what his subjective intent was? Yes, it does matter because his subjective intent was to verify that the vehicle that he was looking for was indeed the green car in the driveway. And at that point, his subjective intent is to enter the property to recover the vehicle. And that in itself is a search. Would you have any case law that says that you can't have a dual purpose, that he couldn't have entered with the intent to talk to whoever was there plus to verify the car? That's what I'm having a little bit of trouble with. So are they mutually exclusive propositions? They are, I would not say that they are mutually exclusive propositions, but in this instance, his entry was specifically for recovery of the vehicle. In other words, he did not park his car on the street and walk up the driveway to speak to people. He didn't pull into the driveway, nonchalantly, and park his car and go up to speak to people. He activated his blue lights as he entered that property, which is not an action that a normal everyday citizen can take. He activated his blue lights as he entered that property, which is a show of authority. And he then went to the vehicle. He verified the VIN number and the tag number. And in South Carolina, he would have had to have done that from the back, because in South Carolina there are no front tags. He verified that information, which he would have necessarily have had to done standing in the cartilage of his home, and then started asking people for, do you know Antonio Miller? Where is Deidre King? And then, when no one was forthcoming, began asking for IDs. And he specifically testified that no one was free to leave. Counsel, assume you're right, that you connect the, you know, the cartilage issue to the expectation of privacy, and assume that wasn't a knock-and-ask type situation. Assume you prevail on both of them. Why wouldn't at least the green car, I'm not talking about the red car, I'm not talking about the statements, but at least the green car and the search of it have been something that is, you know, that would have been subject to the inevitable discovery exception? Well, as I pointed out in my 28J letter in Allen, the court, this court has specifically said, whether you can seek a warrant to search something, and whether you did seek a warrant to search something are two different things. In other words, at that point, when he entered the property, he needed a warrant to search for the vehicle and to search the vehicle. Did he need a warrant? I'm just pushing back a little, I'm not sure on this myself, but did he need a warrant? I mean, he had the GPS, he had the rental agreement, he had the permission of the owner. It seems to me what he was doing on the curtilage, arguably, was verifying the information he already had. He absolutely needed a warrant, and here's the reason why. Because not only did he have that rental agreement, not only did he view what he thought was the vehicle from across the street with other officers, there was no exigent circumstance, and he knew the car had been disabled. So there was no exigent circumstance for him to enter the property thinking, oh, well, the car's going to move, or, you know, he's getting ready to drive it. He knew that it was not going anywhere. There was time to meet with other officers in which to say, hey, here's what's going on, I need you guys to go with me to get up on this property to see about this car. And the car, according to all the testimony, was parked two to three feet from that house, and no one went to get a warrant. There was time, he knew the car wasn't going anywhere, there was no testimony ever that he said, you know what, maybe I should go get a warrant because it's so close to the house. So it's your position that even if he could have obtained a warrant to do that, the fact that he didn't takes it outside the inevitable discovery? There is absolutely no evidence that he would have, in the record, that he would have gotten a warrant. So, yes, that takes it outside the inevitable discovery. Even if he could have, even if there was sufficient evidence for probable cause? Could have and would have are two different things when you're looking at what's the information that's available in the record. And a could have is any day of the week. No, I meant could have in terms of probable cause. He had probable cause. He had probable cause, and that means he should have gotten a warrant. And there are no facts in this record to establish that he would have. Counsel, you told me that none of this was really clear until Collins was decided and that that's why it wasn't raised below. But if that's true, the officer, I mean, we would say the officer wasn't really unnoticed, the law changed, and it would come in under the good faith exception. So my argument there is that it absolutely was clear and that if we are looking at whether or not counsel below should have more vigorously raised a Collins argument, then we are at perhaps plain error review. And my position is that there was an error. It was definitely plain, or it's certainly plain today as we stand here today. It did affect Mr. Miller's substantial rights, and it would be a grave injustice for this court not to recognize it because it would definitely affect how people view judicial proceedings. I don't have anything more specifically. Unless you have more specific questions, I'll reserve the little bit of time I have left. I have one more question while you have that. Sorry about that. But let's assume we don't take this as any preview of anything, but let's assume we rule against you and determine that the search of the green car should not be suppressed and the evidence from it should not be suppressed. If that information isn't suppressed, how would the warrant not be or how would the search of the house not be appropriate under the good faith exception? As I laid out in my brief, the warrant itself is woefully inadequate. There's nothing that connects Mr. Miller, the vehicle, the residence, other than perhaps his presence on the property. I think I understand. If I'm cutting you off on the good faith, I apologize. But I'm right now not focused on whether the warrant itself was adequate. I understand your position. I may have a little bit of a different take to some extent on it, but I'm really talking about the good faith exception. So if you could focus on that, please. My time has expired. Okay. So my personal belief is that it falls under the exception as being a bare bones affidavit. It's wholly lacking in probable cause and that it's so facially deficient that officers executing could not presume that it was valid. The officer who sought the warrant, Officer Brown provided the information to Officer Crane, who then got the warrant. The officer who executed the warrant was Officer Jordan. So the information in the record as to what Officer Jordan knew upon entry and execution of the warrant, again, the record is very confluburated, if that's a real word. I mean, it's topsy-turvy about who knew what, when, and there's the information in the record about what Officer Jordan, the executing officer, knew about. I don't think the question is what the executing officer knew. That would be relevant if we were talking about kind of scope issues and whether the warrant was sufficiently particularized. But I'm pretty sure the question here is what the officer who swore out the affidavit knew. Well, that was Officer Crane, and Officer Brown had called him and supplied the information. My only point about what the officer executing the warrant knew is, under the McKenzie-Goud case, it was uncontroverted that the individuals who sought the warrant also executed the warrant. So they were executing the warrant based on information that they had provided the magistrate and also information that they knew but had inadvertently failed to provide the magistrate. In this circumstance, you've got different officers seeking the warrant, providing information for seeking the warrant, seeking the warrant, and then executing the warrant. Thank you. Thank you. Mr. Booth? May it please the Court? Miller's Collins or trespass claim is forfeited in this court because he only raised the trespass theory in his rebuttal argument at the suppression hearing. That's why the district court didn't make a ruling on it. That's why we don't have an adequate record on it, and that's why this court should not reverse the district court on a ground that was only cursorily raised in the district court. So this court's review of the trespass theory- Are you saying that he didn't make any curtilage argument? No, I'm sorry, Judge Keenan, I didn't say that. He did make a curtilage argument in his reply oral argument at the end of the suppression hearing, but Rule 12 requires a motion to suppress to make the arguments that you're going to make before trial. That serves the salutary purpose of allowing the government then to present its counterarguments to the district court, which allows the government and the defendant to then focus the witness's testimony on the particular points that are relevant to that, which was not done here as a result, which allows the district court to make findings of fact and conclusions of law that allow you then to review that. Now, Judge Harris pointed out a few minutes ago in talking to my colleague, well, there's some gaps here and there. That's correct, Judge Harris, and that's what happens when defendants don't make the proper objections in the district court. You don't get proper records and you don't get findings by the district court. So, therefore, this claim is reviewed for plain error and plain error only, and it is our submission that even assuming you were to find at this point that this is an error, it's not a plain error. And a plain error requires proof that the error was clear or obvious, and here's why it isn't. The facts as developed at this record, again, this is not the best record in the world because the issue wasn't raised, shows at most that this factual scenario is somewhere between Collins on the one hand and the knock-and-talk situation in Kentucky v. King on the other. It may well be in an appropriate case where the issue is squarely raised and it's presented to this court that this court might say on this set of facts, governed by Collins or governed by Kentucky v. King, but at this point, this court or any other court of appeals has a clear rule that says that on this scenario, this is a Collins error. And it's important to notice that in Collins, the only issue there was whether or not the entry by the government agent on the curtilage when the suspect was absent was justified under the automobile exception to the Fourth Amendment. The Supreme Court said no. But in this case, we have a closest scenario to the knock-and-talk situation. And so because you don't have a clear rule of law in this scenario from this court, there is no clear or obvious error for plain error review, and therefore the defendant loses on that particular ground. The court didn't have any specific questions with respect to the search warrant issue. I am happy to answer any questions you have, both as to probable cause, both as to one thing with respect to alternative theory on inventory. The defendant argued that, well, maybe there could have been an inventory because Officer Ham said it was customary for his department to inventory all cars that had been reported stolen. And the counterargument seems to be that, well, they couldn't get a warrant to go onto the property. But actually, the rental car owner, Mr. Jeffrey Day, testified at page 460 to 461 of the joint appendix that when he heard that the officer had been there, he sent two of his employees out to get the car, which means that the two employees could easily go onto the property without violating the Fourth Amendment because this would be a private search and just bring the car to the officers where they do the inventory. So there's no underlying defect in the inventory here. And in addition, they consented to the search of the car. But if you have any questions about the search, since my colleague didn't have an opportunity, I'd be glad to answer them. I have a question about the search of the house and the affidavit and the Leon exception. I had not focused on which officer swore out the affidavit for the search. Which officer was it? I believe it was Officer Crane, but all of the information was known to them. The defendant hasn't made a collective knowledge argument that he wasn't allowed to consider all the evidence. So we can assume you think that the officer, because I know we have held in Thomas and the McKenzie-Goud case, that we can look at information that was known to the officer swearing out the affidavit, even if it didn't make its way into the affidavit. That is correct, yes. And your position is that that universe of information includes everything all the officers knew. That is correct. There is an argument about collective knowledge of the officers. There is some case law about vertical and horizontal. Our argument would be that the knowledge in this case satisfied. Defendant has not made any argument that you have to sort of exclude some of the information known to Officer Ham. But I would say, again, in addition to the information known to the officers under McKenzie-Goud, one of the important points that the Supreme Court made in Leon about indeterminate good faith is if there is a division of authority in the judges who consider this issue, that goes to good faith. And you have a situation here where the South Carolina Court of Appeals judges said it was a good warrant. The Supreme Court of South Carolina said it didn't. The district court in this case said it did. When you have that division of authority, plus all of the factors that were known to the officers that didn't make its way into the warrant, certainly the good faith exception applies in this case. Does the good faith exception depend on your success on the search of the green car? Yes, I'll have to be up front, Judge Cardinal. But what happened was the officers found the 22 grams of suspected cocaine in the car. You don't have the 22 grams of suspected cocaine in the car, just the fact that Miller had a prior narcotics that doesn't cut it. So, yes, the search of the car is important to this prosecution. We're not going to deny that at all. And I asked your colleague about the inevitable discovery issue, and she makes the point that without evidence that the officer would have sought a warrant, that doctrine does not apply. What's your position? I don't believe that there is, again, that he would have had to seek a warrant in the circumstances that happened here. But as I tried to explain to Judge Harris earlier, an alternate basis here for why the officers would have been able to take the car to inventory it is that the USAVE owner had sent two of his employees out to pick the car up. They actually went on property, but then the officers said, you've got to hold off. They could go onto the property and just take the car off the property. Right, but the police officer testified that he wouldn't have let that occur. Once the officers were on the property, it was under police control. And again, Judge Keenan, part of this is that we're dealing here with something of a partial record because the issue wasn't raised properly in the district court. Right, but didn't the officer say, you know, once we were on the property, it was a police matter? It was a police matter. But in terms of an inevitable discovery here, this car that was overdue would not have stayed on Miller's property for very long. And at some particular point, the officers would have been entitled to take that car off his property. Miller couldn't keep it. It was overdue. But if the employees had gone to pick up the car, is it clear that at that point they turn it over to the police? Why don't they just bring it back? Well, again, I understand there was some testimony. We don't have a complete record on this. Anything to indicate that at the normal course of events when a car goes missing, if the rental company's employees pick it up, that they then turn it over to the police rather than just bringing it back to the car rental company? It's a little unclear. I'd have to go back and read Mr. Day's testimony. Again, it seemed a little bit – the reason he sent them there, he said he wanted to get the key. I believe he – let me see if I can find it on these two pages. He says on page 460 of the joint appendix, I was just trying to get help to get the keys back because, like I said, we couldn't reach contact with anybody who didn't know what was going on. And then he indicated that – yes, the deputy said, told your employees it's going to be a while, you're not getting the car back right away. But at some point, that car was going to go back either to the rental company where they would have issued a consent order, and they actually did in this case the day later. This car would have been taken off Miller's property at some point and searched by the officers either pursuant to consent or pursuant to inventory. So then are you relying on also page 485 where the officer testified there would have been – they asked him about even if the car had – even if the representatives, the owner, had showed up at the scene, the officers asked would it have been consistent with Richland County policy to return it to the owner prior to conducting the inventory. And the officer says no, there would have been a full inventory done first because the vehicle was recovered. It was stolen. It was a stolen vehicle that had been recovered. So an inventory would have been taken even if he had showed up at the scene and recovered the vehicle there. I take it the point is that some – He would have given it to the owner's representative, but not before it had been – But the point being is that the car – we're talking here that, yes, there was potentially an initial trespass here, assuming the Collins applies. Our alternative argument is that the inventory here would have been proper because there's no point at which that car would have been entitled to stay on Miller's property forever. It was going to come into the hands of the police by legal means, and if the issue had been squarely raised a little bit more, perhaps we'd have more records. I think it was a friendly question on my part. I just wanted to supplement what you were saying because I think there was more to it on that point. Right. Well, I say there's some – I just want to make sure. I'm sorry if I'm not completely getting this, but it sounds like you're not necessarily contesting the argument that your colleague made about the requirement that the officer would have obtained a warrant. You're looking at the inventory as the basis for a possible discovery. Oh, yes. That is correct. It's not that they would have gotten a warrant, and then pursuant to the warrant that they would have searched the car. It was that Ham testified that it was always the case that an inventory would be done when we recover a car that has been reported stolen. So that's the inevitability that would have resulted in the seizure of the 22 grams of suspected cocaine. No further questions? We ask to affirm the judgment. Sir, thank you. Ms. Harrell? As far as the argument being forfeited, I would, again, point to Mr. Bloom's raising the argument in the district court. Again, perhaps not as fully as they could have, but it was on the table, and the district court certainly could have addressed the issue. Indeed, in the order, the district court did not address the inevitable discovery matter. So it's within the district court's discretion as to what it might or might not address in reaching its conclusion. So while the record is not entirely clear at this point, it was raised, and I would argue that plain error does not apply. But if it does, I still believe that Mr. Miller prevails based on the test. And so I would argue that the district court should be reversed at that point. Counsel, can I ask you something? We have evidence in the House. We have the evidence from the green car. We have some statements, and we have the evidence in the red car. If we were to think the evidence in the red car and the statements should have been suppressed, does that make any difference in the outcome here? But not the evidence in the green car and not the evidence in the House. It doesn't really make a difference because the evidence that led to the search of the residents came from the green car. Okay, so that would be, if that was an error, that would be a harmless error. Now, I will say that Officer Dalway, Sergeant Dalway, who testified in 2008 but not in 2018, but like I said in my brief, district court relied on both hearings, testimony when she wrote her order. He testified that the reason he opened the door to that green car was because where there's one gun, there's likely more. He didn't open that door to do an inventory search. He opened the door to that green car to look for evidence. And so I would argue that his subjective reason for opening that door the first time was not to do an inventory search, although he said, oh, well, yes, we would have gotten to that. He opened that door to find evidence, and that is wrong. But you're not challenging the search of the red car, right? Well, only in the sense that I will say that counsel below did waive standing, expressly waive standing, but he did not. If we were able to go the route of the Collins argument, both of those cars were in the cartilage. And Mr. Miller did not waive any argument as to any vehicles or any property in the cartilage of his home, and he has standing to raise that. You said that differently. Defense counsel specifically said, it wasn't just standing, although there was an allusion to standing, but we've got no objection to the search of the red car. And for me, because you are right that the logic of this cartilage argument would extend to both, that's just even more reason why the district court would not have been unnoticed, that there's some argument at work here that makes the standing issue of the cars irrelevant. Well, I think the theory, you were right, that the theory that you are now propounding is inconsistent with the concession in the written papers. Well, the best I can do for Mr. Miller at this point is to argue that both of the cars were in the cartilage of his home and that he had the right to assert his Fourth Amendment right as to his home in the cartilage, and therefore the red car would be covered even if he didn't have, even if it was somebody else's property. He would have standing to his Fourth Amendment rights in his home and his cartilage. Mr. Booth wants to rely on the inventory search, wants to rely on the inventory search, and Mr. Day, who was the USAVE manager, did sign a consent two days later. But first of all, you don't get to the inventory search if the intrusion onto the cartilage and seizure of the vehicle is wrong under the Fourth Amendment's right extending to the home and cartilage. And also, in other words, if the owner, as I said in my brief, if the owner of the motorcycle in Collins had signed a consent to say, yeah, you can go on Joe's property and look and see if that's my motorcycle, that would not cure the defect. That wasn't your argument in Collins. No, but all I'm saying is if the owner of the motorcycle had done that, that wouldn't cure the Fourth Amendment intrusion. So to me, the inventory search of the vehicle is a red flag based on the ability, you've got to get in, you've got to be in the proper place at the proper time. In other words, you have to have a lawful reason to be on his property. And Officer Hamm did not at that point because he had probable cause, he knew where the vehicle was, it was disabled, he had time to call his friends, other officers, for them to stage an entry. He activated his blue lights when he came onto the property and it was in the cartilage of Mr. Miller's home. I thought the whole point of the inevitable discovery exception is that, of course, there's been an underlying constitutional violation. Otherwise, you don't need an exception to suppression. I guess I'm not understanding your argument that if there was a constitutional violation, then that means you can't have inevitable discovery. Because in this circumstance, he intruded into the cartilage. There's your Fourth Amendment violation. There is no evidence to show that he would have gotten a warrant to get there, right? And then there's no attenuation from that illegal entry to the discovery of the materials in the cars. But I think the question is the inevitable discovery doctrine presupposes a constitutional violation, doesn't it? I would argue that you still have to have some attenuation between. Well, in other words, there's certainly not enough time between the illegal entry and Officer Dallway opening the door of the car to find the grams of crack or some inventory search. It all flows from the illegal entry. And so, therefore, it doesn't work. Anything further? No. Thank you so much. Thank you very much. We'll come down to Greek counsel, and then we'll proceed to call the next case.
judges: Barbara Milano Keenan, Pamela A. Harris, A. Marvin Quattlebaum Jr.